45 Cal.App.4th 1780 (1996)
CHILDREN'S HOSPITAL OF LOS ANGELES, Plaintiff and Appellant,
v.
ELEANOR SEDGWICK, Defendant and Respondent.
Docket No. B087739.
Court of Appeals of California, Second District, Division Six.
June 3, 1996.
*1783 COUNSEL
Veatch, Carlson, Grogan & Nelson, C. Snyder Patin, Richard A. Wood, Greines, Martin, Stein & Richland, Kent L. Richland and Barbara Springer Perry for Plaintiff and Appellant.
Bonne, Bridges, Mueller, O'Keefe & Nichols, Reid Bridges, Patricia K. Ramsey, Thelen, Marrin, Johnson & Bridges, Curtis A. Cole and Helen J. Lauderdale for Defendant and Respondent.
OPINION
GILBERT, J.
A plaintiff brings a medical malpractice action against an anesthesiologist for injuries she sustained in surgery. The anesthesiologist prevails. The plaintiff then brings a second action in another county against a hospital to which she was transferred following her surgery. She receives substantial damages. May the hospital, a subsequent tortfeasor, sue the anesthesiologist, a prior tortfeasor, for equitable indemnity? No.
Plaintiff Children's Hospital of Los Angeles (Hospital) appeals a summary judgment in favor of defendant Eleanor Sedgwick, M.D. We affirm.

FACTS
On December 10, 1993, plaintiff Hospital brought this action for equitable indemnity against Doctor Eleanor Sedgwick. Hospital's complaint alleged that Doctor Sedgwick, an anesthesiologist, negligently administered anesthesia to Valerie Castro, a patient at Westlake Community Hospital. Valerie, then a 20-month-old child, underwent elective surgery on November 4, 1983, to repair an abdominal scar. Hospital alleged that Doctor Sedgwick "negligently administered anesthetic medications, negligently failed to properly monitor Valerie Castro during the surgery and thereafter negligently failed to undertake proper procedures to treat [her]." This alleged negligence caused Valerie prolonged bradycardia and hypoxic brain injury.
*1784 Following surgery, Westlake Community Hospital transferred Valerie to plaintiff Hospital. Thereafter, Valerie developed cortical blindness and other neurological injuries.
Hospital alleged that on February 6, 1990, Valerie, through her guardian ad litem, brought a malpractice action against Hospital in Los Angeles County Superior Court. (Castro v. Children's Hospital (Super. Ct. L.A. County, 1990, No. C751445).) Following trial, the jury awarded substantial damages to Valerie. Thereafter, Hospital settled the lawsuit for $2.5 million.
By the present lawsuit, Hospital seeks equitable indemnity from Doctor Sedgwick for the $2.5 million payment made on Valerie's behalf. (Hospital alleged it paid Valerie's guardian ad litem $625,000 and purchased an annuity for $1,875,000 for Valerie's benefit.) Hospital alleged that the damages Valerie recovered "were caused primarily and ultimately by [Doctor Sedgwick's] prior medical negligence...."
Doctor Sedgwick answered Hospital's complaint and moved for summary judgment, contending Hospital had no cause of action against her for equitable indemnity. Doctor Sedgwick presented evidence of a favorable judgment in an earlier action in Ventura County concerning her asserted medical negligence and Valerie's injuries. (Castro v. Sedgwick (Super. Ct. Ventura County, 1984, No. 83307).)[1] By special verdict, the jury in that action found Doctor Sedgwick negligently treated Valerie but that her negligence was not a legal cause of Valerie's injuries.
In the Ventura County action, Valerie named Hospital as a defendant. Before trial, however, she dismissed the action against Hospital, without prejudice.
Doctor Sedgwick also presented evidence of the jury's special verdict in the Los Angeles County action. By this special verdict, the jury stated Valerie was not suffering vision loss when admitted to Hospital and that Hospital could have prevented her injuries by treating her with reasonable care.
*1785 Hospital responded that in the Los Angeles County action, the trial court precluded evidence of Doctor Sedgwick's alleged negligence. Hospital argued that it was entitled to now litigate Doctor Sedgwick's alleged negligence since it had no prior opportunity to do so. Hospital contended it was not bound by the Ventura County action because Valerie dismissed it, before trial, as a defendant. Hospital based its contentions upon constitutional principles of due process.
The trial court granted summary judgment, reasoning that a cause of action for equitable indemnity requires the indemnitor to be jointly and severally liable to the injured party. The trial judge stated: "[I]t seems undisputed that the jury in Ventura found no liability [by Doctor Sedgwick] to [Valerie] for her vision loss and therefore, there is no basis for this claim of shared or joint or several liability...."
Hospital appeals and contends it has not received an opportunity to litigate Doctor Sedgwick's comparative fault.[2]

CONTENTIONS
Hospital argues it is not bound by the judgment in favor of Doctor Sedgwick in the Ventura County action because it was not a party to that action at any relevant time. (Blonder-Tongue v. University Foundation (1971) 402 U.S. 313, 329 [28 L.Ed.2d 788, 800, 91 S.Ct. 1434] [litigant who has not appeared in prior action is not collaterally estopped by issues determined there]; Traub v. Board of Retirement (1983) 34 Cal.3d 793, 798 [195 Cal. Rptr. 681, 670 P.2d 335] [issue determined by final judgment is conclusive between parties or their privies in subsequent suit]; Bernhard v. Bank of America (1942) 19 Cal.2d 807, 811 [122 P.2d 892] [doctrines of res judicata and collateral estoppel apply only if due process satisfied].)
Hospital also contends the Los Angeles County action did not concern Doctor Sedgwick's joint liability. It points to two issues of material fact: 1) Doctor Sedgwick's negligence may have been a legal cause of Hospital's economic damages (the $2.5 million settlement) and 2) Doctor Sedgwick may be comparatively negligent. (See Maxwell v. Powers (1994) 22 Cal. App.4th 1596, 1606 [28 Cal. Rptr.2d 62] [initial wrongdoer also liable to plaintiff for subsequent negligent medical care].) In summary, Hospital asserts that it has been denied due process of law by the foreclosing of its equitable indemnity lawsuit against Doctor Sedgwick.
*1786 Doctor Sedgwick responds that Hospital's equitable indemnity action is subject to the same substantive defenses she may raise against Valerie, namely, her nonliability already has been determined. (Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital (1994) 8 Cal.4th 100, 114-115 [32 Cal. Rptr.2d 263, 876 P.2d 1062] (Western Steamship).) She relies upon Allis-Chalmers Corp. v. Superior Court (1985) 168 Cal. App.3d 1155, 1157-1159 [214 Cal. Rptr. 615], holding that a defendant who has been successful against the plaintiff is entitled to judgment on a cross-complaint for equitable indemnity brought by a codefendant. (See also American Motorists Ins. Co. v. Vigen (1942) 213 Minn. 120 [5 N.W.2d 397, 399-400, 142 A.L.R. 722]; Spitzack v. Schumacher (1976) 308 Minn. 143 [241 N.W.2d 641, 644] [despite not being a party to plaintiff's action, prospective indemnitee may not relitigate exonerated defendant's liability].)
Doctor Sedgwick also argues that equitable considerations demand dismissal of Hospital's action for equitable indemnity for several reasons. First, it is unfair to allow Hospital to recover from Doctor Sedgwick for Valerie's injuries when Valerie could not. Second, Doctor Sedgwick would have been bound by an unfavorable judgment in the Ventura County action but not protected here from relitigating her liability where she has a favorable judgment. This is an anomalous result given the community of interests among her adversaries. Third, Hospital could have brought a cross-complaint for indemnity in the Ventura action when it appeared and answered Valerie's complaint. (Code Civ. Proc., § 581, subd. (i).) It therefore could have litigated Doctor Sedgwick's comparative negligence in the Ventura County action. Doctor Sedgwick adds that principles of collateral estoppel preclude Hospital's action for equitable indemnity.

DISCUSSION

I
(1) The basis for the remedy of equitable indemnity is restitution. "`[O]ne person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay.'" (Western Steamship, supra, 8 Cal.4th 100, 108, citing Rest.2d Torts, § 886B, com. c, at pp. 345-346.)
California common law recognizes a right of partial indemnity under which liability among multiple tortfeasors may be apportioned according to the comparative negligence of each. (Western Steamship, supra, 8 Cal.4th 100, 109.) Indemnification is not "`automatically available,'" however, but is permitted in appropriate cases. (Ibid.) "Thus, irrespective of the equities *1787 between or among multiple tortfeasors, the right is subject to qualification; and countervailing considerations may limit recovery." (Ibid., e.g., defendants who enter into good faith settlements and employers who pay workers' compensation benefits protected from indemnity claims of concurrent tortfeasors.)
(2) Moreover, an action for equitable indemnity is premised upon a joint legal obligation to another for damages. (Western Steamship, supra, 8 Cal.4th 100, 114.) As against the indemnitee, the indemnitor may invoke any substantive defense to liability that is available against the injured party. (Ibid.) Thus, concerning matters of substantive law, an action for equitable indemnity is "wholly derivative and subject to whatever immunities or other limitations on liability [that] would otherwise be available. [Fn. omitted.]" (Id., at p. 115.) "[I]f the evidence establishes that a defendant is not a concurrent tortfeasor responsible in any way for the plaintiff's injuries, another defendant may not pursue a claim for indemnity against that defendant." (Frank v. State of California (1988) 205 Cal. App.3d 488, 494 [252 Cal. Rptr. 410], italics added.) This principle is often expressed in the shorthand phrase "... there can be no indemnity without liability." (Munoz v. Davis (1983) 141 Cal. App.3d 420, 425 [190 Cal. Rptr. 400].)[3]
(3) Hospital's equitable indemnity claim lacks the essential element of common liability to an injured person. (Western Steamship, supra, 8 Cal.4th 100, 114-115; Allis-Chalmers Corp. v. Superior Court, supra, 168 Cal. App.3d 1155, 1159.) Doctor Sedgwick may raise against Hospital any substantive defense to liability that she could assert against Valerie. Her exoneration from liability after trial on the merits of her alleged malpractice precludes Valerie, and derivatively, Hospital, from relitigating her alleged negligence. (Western Steamship, supra, 8 Cal.4th 100, 114-115.)
Equitable considerations also support preclusion of Hospital's equitable indemnity claim. Permitting Hospital to proceed against Doctor Sedgwick would allow recovery for a tortfeasor under circumstances where the injured plaintiff failed to recover following trial on the merits. Doctor Sedgwick would also be in the anomalous situation of being bound by an unfavorable judgment in the Ventura action but not freed from relitigation of a favorable judgment.
(4a) It does not offend constitutional principles of due process to bar Hospital from relitigating Doctor Sedgwick's liability. (5) A party is *1788 collaterally estopped from relitigating an issue only if 1) the issue decided in a prior adjudication is identical with that presented in the action in question; 2) there was a final judgment on the merits; and 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. (Clemmer v. Hartford Ins. Co. (1978) 22 Cal.3d 865, 874 [151 Cal. Rptr. 285, 587 P.2d 1098].) The requirement of identity of parties or privity is a requirement of due process. (Ibid.) "[D]ue process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." (Id., at p. 875.)
In deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need to minimize repetitive litigation and prevent inconsistent judgments. (Clemmer v. Hartford Ins. Co., supra, 22 Cal.3d at p. 875.) (4b) Ultimately, determination of privity depends upon whether it is fair to bind Hospital with the judgment in a lawsuit in which it was dismissed as a party before trial. (Aronow v. LaCroix (1990) 219 Cal. App.3d 1039, 1048-1049 [268 Cal. Rptr. 866].)
We conclude it is fair to bind Hospital with the judgment in the Ventura County action. As Hospital concedes, it had the opportunity to prove in the Los Angeles action that Valerie's injuries were caused by Doctor Sedgwick's care, although it was not allowed to show the doctor's conduct fell below the standard of care. Hospital had a "community of interest with" Valerie in seeking to hold Doctor Sedgwick liable for Valerie's injuries. (Clemmer v. Hartford Ins. Co., supra, 22 Cal.3d at p. 875.) Valerie, like Hospital here, sought to prove that Doctor Sedgwick negligently treated her and that negligence caused her injury. Indeed, it is difficult to conceive of anyone with a stronger interest then Valerie in establishing Doctor Sedgwick's negligence.
Hospital and Doctor Sedgwick cite Long Beach Grand Prix Assn. v. Hunt (1994) 25 Cal. App.4th 1195 [31 Cal. Rptr.2d 70] (Grand Prix), Columbus Line, Inc. v. Gray Line Sight-Seeking Companies Associated, Inc. (1981) 120 Cal. App.3d 622 [174 Cal. Rptr. 527] (Columbus Line), and Allis-Chalmers Corp. v. Superior Court, supra, 168 Cal. App.3d 1155, to support their respective arguments.
These decisions are sufficiently dissimilar to the factual circumstances here as to be of little assistance. Grand Prix concerned plaintiff's dismissal, with prejudice, of her tort action against one of two defendants. The reviewing court held it unfair to permit the dismissed defendant to avoid liability on *1789 a cross-complaint by his codefendant for equitable indemnity because the dismissed defendant's alleged negligence had never been litigated. (Grand Prix, supra, 25 Cal. App.4th at p. 1203.) Grand Prix predated Western Steamship and can be read as involving a procedural, not a substantive, defense to liability. (Western Steamship, supra, 8 Cal.4th at pp. 114-115.)
In Allis-Chalmers Corp. v. Superior Court, supra, and Columbus Line, supra, one of two defendants was exonerated from liability prior to trial. In each case, the exonerated defendant successfully obtained judgment on a pending indemnification action brought by the codefendant. All parties were present in the main action and the codefendants could challenge the defendants' exoneration before trial. (Allis-Chalmers Corp. v. Superior Court, supra, 168 Cal. App.3d at pp. 1158-1159; Columbus Line, supra, 120 Cal. App.3d at pp. 630-632.)

II.
(6) As an independent ground for affirming the trial court's judgment, we hold as a matter of law that equitable indemnity is not available to shift a subsequent medical provider's liability to the initial medical provider under Ash v. Mortensen (1944) 24 Cal.2d 654, 657 [150 P.2d 876] and Maxwell v. Powers, supra, 22 Cal. App.4th 1596, 1606. If the rule were otherwise, every alleged tortfeasor would be a malpractice insurer. Equity does not permit such a result. (Western Steamship, supra, 8 Cal.4th 100, 109 [equitable indemnity allowed only in "`appropriate cases'"].) Hospital does not cite authority supporting recovery by a subsequent tortfeasor against the initial tortfeasor for subsequent acts of malpractice.
Munoz v. Davis, supra, 141 Cal. App.3d 420 denied equitable indemnification to an attorney-defendant against the driver of the car who collided with the car in which plaintiff was a passenger. Plaintiff sued the attorney for malpractice, after the attorney failed to sue the driver within the statute of limitations. The attorney sought indemnification from the driver, reasoning "... that but for [the driver's] negligence [he] would never have had the opportunity to commit malpractice...." (Id., at p. 425.) The attorney relied upon the authority that Hospital cites here. (Ash v. Mortensen, supra, 24 Cal.2d 654, 657.) The reviewing court held that equitable reasons and public policies precluded the attorney's equitable indemnity action. (Munoz v. Davis, supra, 141 Cal. App.3d at pp. 429-430.) "There is no suggestion in [American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578 (146 Cal. Rptr. 182, 578 P.2d 899)] that by adopting partial equitable indemnity the court intended to make every alleged tortfeasor into a malpractice insurer. No principle of equity or public policy supports that result. Yet, that *1790 would be precisely the result of allowing a claim for equitable indemnity under the circumstances of the instant case." (141 Cal. App.3d at p. 430.) The court also relied, in part, upon the maxim that one should not be allowed to take advantage of his own wrong. (Ibid.; Civ. Code, § 3517.) For these same reasons, Hospital cannot bring an equitable indemnity action against Doctor Sedgwick.
Accordingly, the judgment is affirmed. Children's Hospital is to bear costs on appeal.
Stone (S.J.), P.J., and Yegan, J., concurred.
A petition for a rehearing was denied July 2, 1996, and appellant's petition for review by the Supreme Court was denied September 18, 1996. Kennard, J., was of the opinion that the petition should be granted.
NOTES
[1] As did the trial court, we take judicial notice of the judgment and special verdict in Ventura County Superior Court case No. 83307 and the special verdict in Los Angeles County Superior Court case No. C751445. (Evid. Code, § 459.)

To ease the reader's task, we refer to Valerie's lawsuit against Doctor Sedgwick in Ventura County as "the Ventura County action" and Valerie's lawsuit against Hospital in Los Angeles County as "the Los Angeles County action."
[2] Although Hospital appeals a "[Proposed] Order Granting Summary Judgment," the "[Proposed] Order" in fact orders judgment to be entered in favor of Doctor Sedgwick. Under such circumstances, we disregard the label of the order and treat Hospital's appeal as one from a final judgment. (Hoffman v. Municipal Court (1970) 3 Cal. App.3d 621, 623, fn. 1 [83 Cal. Rptr. 747].)
[3] For certain procedural purposes, an indemnity claim is an independent action. (Western Steamship, supra, 8 Cal.4th 100, 114-115; People ex rel. Dept. of Transportation v. Superior Court (1980) 26 Cal.3d 744, 752 [163 Cal. Rptr. 585, 608 P.2d 673] [plaintiff's failure to file government tort claim does not preclude defendant's equitable indemnity action against the state].) This appeal concerns a matter of substantive, not procedural, law. (Western Steamship, supra, 8 Cal.4th 100, 114-115.)