Filed 6/8/21  Humboldt Waste Management Authority v. GHD CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| HUMBOLDT WASTE MANAGEMENT AUTHORITY,<br><br>     Cross-Complainant and Appellant,<br><br>v.<br><br>GHD INC.,<br><br>     Cross-Defendant and Respondent. | A159210<br><br>(Humboldt County<br>Super. Ct. No. DR160325) |

Humboldt Waste Management Authority (Humboldt) and GHD Inc. (GHD) were codefendants in a negligence action filed by Daniel Hogan, who was injured when he fell into a hole at Humboldt's landfill.  GHD, the successor to a firm that had provided construction engineering services at the landfill, obtained summary judgment against Hogan, and the trial court then dismissed a cross-complaint for indemnification that Humboldt had filed against GHD.  On appeal, Humboldt contends the trial court erred by using the completed and accepted doctrine to bar Humboldt from seeking indemnity against GHD.

Humboldt made this same claim in its appeal from a judgment dismissing codefendant Griffin Dewatering Corporation (Griffin) from

1

Hogan's action.  (See *Humboldt Waste Management Authority v. Griffin Dewatering Corporation* (Feb. 24, 2021, A159199) [nonpub. opn.] (*Humboldt I*).)  We take judicial notice of our decision in *Humboldt I*, which we follow here in rejecting Humboldt's claim of error but remanding this matter to give Humboldt an opportunity to amend its cross-complaint.  (Evid. Code, § 451.)

## BACKGROUND

### I.  Hogan's Personal Injury Action

On June 24, 2016, Hogan filed a complaint for damages resulting from an injury he sustained on June 24, 2015 while working at Humboldt's landfill. Hogan's original complaint named five defendants:  Humboldt; Griffin; Winzler & Kelly (Winzler); SCS Field Services (SCS); and the County of Humboldt.  In October 2016, Hogan dismissed Winzler from this action, and a year later he filed a "Doe Amendment" naming GHD as a defendant. Meanwhile, the County was dismissed from the case after filing a successful motion for summary judgment.

In his operative first amended complaint, Hogan alleged the following facts about his 2015 injury:  Hogan was employed by a contractor performing work at Humboldt's landfill, when he walked "around a piece of equipment being operated by a co-employee" and "fell approximately twelve feet into an unmarked test well known as 'Old GP-4.' "  The test well was supposed "to have been filled in sometime in 2006, but instead remained unfilled and unmarked and hidden" from Hogan's view "by tall grass."

With these allegations, Hogan asserted a negligence claim against all defendants and a premises liability claim against Humboldt.  In his cause of action for negligence, Hogan alleged that GHD is "the successor to Winzler & Kelly which was involved in construction and construction management and supervision services involving Old GP-4 and negligently performed those non-

2

engineering services. Such negligence included not filling the hole at Old GP-4 or inadequately supervising the individuals or entities involved in backfilling Old GP-4."

## II. Humboldt's Cross-Complaint

In March 2018, Humboldt filed a cross-complaint for equitable indemnity, contribution, and declaratory relief against GHD as successor in interest to Winzler. Humboldt's first cause of action for indemnification incorporated by reference allegations in Hogan's complaint for the limited purpose of setting forth Hogan's claims. Humboldt denied liability for Hogan's accident and alleged that if it was "in some manner responsible" to Hogan or any third party, its liability "would be based solely upon a derivative form of liability not resulting from [its own] conduct . . . , but only from an obligation imposed upon [it] by law." Therefore, Humboldt alleged, it was entitled to "complete indemnity" from GHD.

In its second cause of action for apportionment of fault, Humboldt alleged GHD was wholly or partially responsible for Hogan's injuries, and if Humboldt was held liable to Hogan, GHD should be required to pay a share of the judgment that was "in proportion to" GHD's "comparative negligence, fault or legal liability" in causing the damages, and GHD should also be required to reimburse Humboldt for any payment it makes to Hogan "in excess of [its] proportional share of negligence."

Humboldt also sought a judicial declaration regarding the respective rights and duties of Humboldt and GHD. Humboldt alleged it was entitled to this relief because GHD disputed Humboldt's contention that if Humboldt was "in any way liable" for Hogan's injuries, "said liability will be the responsibility, in whole or in part, of [GHD]."

3

## III. GHD's Summary Judgment Motion

In February 2019, GHD sought summary judgment against Hogan on the ground that Hogan's negligence claim failed as a matter of law. In support of this motion, GHD alleged the following facts were undisputed: Winzler was a civil engineering firm retained by Humboldt to assist with multiple projects at the landfill. In July 2006, Winzler and Humboldt executed a written agreement pursuant to which Winzler agreed to (1) prepare a plan for closure and postclosure maintenance of the landfill, and (2) provide "construction engineering services" related to implementing the closure plan. Part of the plan was to upgrade the landfill's well system and called for the destruction of Old GP-4. Drilling work on the well system was performed by Griffin and "logged" by either Winzler or SCS. Work on Old GP-4 was completed in the summer of 2006, a final version of the closure plan was completed in November 2006, and Winzler submitted its final bill to Humboldt in August 2007. The closure plan assigned responsibility to Humboldt for "postclosure" maintenance of the landfill site for "a minimum of 30-years or until the waste no longer pose[d] a threat to the environment or human health and safety." In December 2011, GHD merged with Winzler and became its successor in interest.

In its motion, GHD sought summary judgment against Hogan on three distinct grounds. First, GHD argued that any claim for damages arising out the professional negligence of Winzler was time-barred because Hogan failed to file and serve a certificate of merit before he filed his original complaint, as required by Code of Civil Procedure section 411.35 (statutory references are to this Code of Civil Procedure, unless otherwise specified). Second, GHD argued in the alternative that Hogan could not establish the causation element of his negligence claim as there was no evidence Winzler's services

4

contributed to Hogan's injury. Finally, GHD argued Hogan's claim was barred by the completed and accepted doctrine. (Citing *Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 969 (*Neiman*); *Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1467 (*Sanchez*).)

The completed and accepted doctrine permits a contractor on a construction project to avoid tort liability for injury or damage to a third party resulting from the condition of the contractor's work after that work has been completed and accepted by the owner of the property where the injury occurred. (*Neiman, supra*, 210 Cal.App.4th at pp. 969–972.) In California, the completed and accepted doctrine is a liability-shifting mechanism that implements a policy judgment regarding the respective duties of the contractor and property owner in cases involving a third party injury. (*Id.* at p. 969; *Sanchez, supra*, 47 Cal.App.4th at p. 1466; *Jones v. P.S. Development Co., Inc.* (2008) 166 Cal.App.4th 707, 712 (*Jones*) overruled on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7.) The rationale underlying the doctrine is that "liability for the safety of a contractor's work shifts to the owner upon acceptance of the work, that is, when the owner has had an opportunity to examine the work, and thereafter represents that it is safe." (*Jones*, at p. 717.)

Hogan opposed GHD's summary judgment motion on two grounds. First, Hogan argued his negligence claim was not time-barred because he complied with section 411.35 by serving GHD with a certificate of merit when GHD was named as a Doe defendant. Hogan also argued that Winzler's work at the landfill may have created a latent defect. One material limitation of the completed and accepted doctrine is that it "applies to patent defects, but not latent defects. 'If an owner, fulfilling the duty of inspection, cannot discover the defect, then the owner cannot effectively represent to the world

5

that the construction is sufficient; he lacks adequate information to do so.' " (*Neiman*, *supra*, 210 Cal.App.4th at p. 969.)  Hogan argued that if his injury was caused by a latent defect, his negligence claim against GHD was not barred by the completed and accepted doctrine.

On September 25, 2019, the trial court granted GHD summary judgment on the ground that Hogan did not timely file and serve the certificate of merit required by section 411.35, which was required based on undisputed evidence that Winzler was a professional engineering firm.  (See *Curtis Engineering Corp. v. Superior Court* (2017) 16 Cal.App.5th 542, 551.)  As the section 411.35 violation was a "complete affirmative defense" to Hogan's action, no triable issues of material fact precluded entry of judgment in favor of GHD.

## IV.  Griffin's Motion for Summary Judgment

Meanwhile, in February 2019, Griffin had also filed a motion for summary judgment against Hogan.  (*Humboldt I*, *supra*, A159199.)  Like GHD, Griffin invoked the completed and accepted doctrine as one ground for its motion.  Griffin argued that the doctrine applied to establish that Griffin's liability and duty of care to Hogan terminated in 2006, when Griffin completed its drilling work at the landfill and Humboldt accepted Griffin's completed work.  (*Id.*)  In opposing Griffin's summary judgment motion, Hogan made the same argument about the completed and accepted doctrine that he made with respect to GHD's motion—that there was a triable issue as to whether Griffin's work created a latent defect that caused Hogan's injury, in which case the completed and accepted doctrine would not apply.  (*Id.*)

The trial court granted Griffin summary judgment on October 3, 2019, eight days after it granted GHD summary judgment.  The court found there were no triable issues precluding summary judgment of Hogan's negligence

6

claim as the completed and accepted doctrine relieved Griffin of its duty of care to Hogan. (*Humboldt I*, *supra*, A159199, citing *Sanchez*, *supra*, 47 Cal.App.4th 1466.) The court based this ruling on the following undisputed facts: "In July and August 2006, Griffin completed its work on a project to decommission the Old GP-4 test well at the Humboldt landfill. Humboldt accepted Griffin's work by August 2006, at the latest. Thereafter, Griffin had no obligation to monitor or maintain the work that Humboldt had accepted. In October/November 2007, Humboldt noticed erosion and sinkholes in the area where Griffin had performed its work and addressed these issues by conducting additional filling." (*Humboldt I*, *supra*, A159199.) In granting Griffin summary judgment, the court also found that any defect in Griffin's work was patent rather than latent, based on evidence showing, among other things, that the hole Hogan fell into " 'was substantial by all accounts.' " (*Id.*)

## V. GHD's Motion For Further Ruling or Dismissal of Claims

On October 17, 2019, GHD filed a motion for further ruling on its motion for summary judgment against Hogan or in the alternative for a dismissal of remaining claims against GHD, which the court agreed to hear on shortened time due to a looming trial date. This motion was brought on the ground that a supplemental ruling from the court would "promote the interests of fairness and judicial economy while working no injustice on any other party" because GHD was not raising any new issue, but sought only to eliminate uncertainty as to whether GHD's defense to Hogan's negligence claim barred derivative claims for indemnity and contribution that had been filed against GHD.

In its motion, GHD requested that the court supplement its summary judgment order by finding that the completed and accepted doctrine barred Hogan's negligence claim against GHD. GHD argued this additional ruling

7

was warranted because the court had granted Griffin summary judgment on the ground that the completed and accepted doctrine barred Hogan's claim, Griffin and GHD are similarly situated, and a finding that the completed and accepted doctrine applies to GHD would establish a complete substantive defense to Hogan's negligence claim, whereas an argument could be made that Hogan's failure to timely file a certificate of merit was only a procedural ruling. Thus, GHD requested that the court "amend its summary judgment ruling as to GHD to discuss the . . . completed and accepted doctrine" or alternatively, if the court "believed" that the remaining derivative claims against GHD were barred by its current summary judgment ruling, GHD requested that the court dismiss those claims with prejudice.

No party opposed GHD's motion, which was heard by the court on October 21, 2019. A minute order from that hearing indicates that several parties made appearances, including Humboldt, the court granted GHD's "[m]otion to dismiss," and the court stated that it would "prepare an amended ruling" on GHD's motion for summary judgment. That same day, the court issued a written order, which was captioned as an "AMENDED/ SUPPLEMENTAL RULING ON GHD MOTION FOR SUMMARY JUDGMENT AND DISMISSAL OF ALL OTHER CLAIMS WITH PREJUDICE."

The crux of the October 2019 order is that Griffin and GHD "are similarly situated in that the analysis and ruling as to the application of the completed and accepted doctrine would apply and therefore act as a bar against further actions against GHD, Inc. relevant to this case." As support for this finding, the court emphasized these facts: GHD was the "engineering entity" involved in a project pursuant to which Griffin performed "well work" at Humboldt's landfill; Griffin completed its work in July 2006; GHD's work

8

on the project was completed and accepted by Humboldt in August 2006; no one notified GHD about a potential problem with the well work until after Hogan was injured in 2015; and GHD had no obligation to monitor or maintain any of that work.

In its October 2019 order, the court rejected Hogan's contention that work performed by Griffin and/or GHD caused latent defects at the landfill, finding that the defendants' summary judgment evidence established that the hole where Hogan was injured was not a latent defect. Finally, the court found that because the completed and accepted doctrine was an additional basis for granting GHD summary judgment, remaining claims against GHD were dismissed with prejudice.

A judgment submitted on behalf of GHD was filed on November 4, 2019. The judgment incorporates the trial court's rulings that GHD is entitled to summary judgment on two independent grounds: Hogan's failure to timely file or serve a certificate of merit pursuant to section 411.35; and the applicability of the completed and accepted doctrine. The judgment also incorporates the court's finding that its amended summary judgment ruling bars the remaining claims against GHD and dismisses those claims with prejudice.

## DISCUSSION

### I. Issues On Appeal and Standard of Review

Humboldt contends that the part of the judgment dismissing its cross-complaint against GHD must be reversed because the trial court committed an error of law by finding that the completed and accepted doctrine bars Humboldt from seeking indemnity against GHD. Characterizing the challenged ruling as an improper grant of summary judgment, Humboldt seeks de novo review.

9

As a preliminary matter, we reject Humboldt's conception of the judgment.  In October 2019, the trial court granted GHD's dual request to amend the summary judgment order as to Hogan *and* to dismiss derivative claims for indemnification.  After amending the summary judgment order against Hogan, the court dismissed Humboldt's cross-complaint because the finding that GHD is not liable for Hogan's injuries establishes that Humboldt's derivative claim for equitable indemnity fails as a matter of law.  This aspect of the court's ruling was not a grant of summary judgment but a grant of judgment on the pleadings, which is authorized by section 438 when a cross-complaint fails to state a cause of action, and can be made on the court's own motion or pursuant to a cross-defendant's motion.  (§ 438, subds. (b) & (c).)

A judgment on the pleadings is "equivalent to a demurrer."  (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)  Thus, we review the cross-complaint de novo to determine whether Humboldt alleged facts sufficient to constitute a "legally cognizable claim" (*Stoops v. Abbassi* (2002) 100 Cal.App.4th 644, 650) under any legal theory (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879).  Humboldt's contention here is that it has a valid claim for indemnification against GHD.  Generally, indemnification "refers to 'the obligation resting on one party to make good a loss or damage another party has incurred.' "  (*Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, 1157 (*Prince*).)  California recognizes two types of indemnity:  express indemnity and equitable indemnity.  (*Ibid*.)  We consider separately these two distinct theories of liability.

10

## II. Equitable Indemnification

Humboldt's cross-complaint sought indemnification from GHD based solely on theories of equitable indemnity and contribution. "Although traditional equitable indemnity once operated to shift the entire loss upon the one bound to indemnify, the doctrine is now subject to allocation of fault principles and comparative equitable apportionment of loss." (*Prince, supra,* 45 Cal.4th at p. 1158.) " ' "The elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible." ' " (*C.W. Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 700.)

The record supports the trial court's finding that Humboldt cannot allege a valid claim against GHD for equitable indemnity because GHD is not liable for Hogan's injuries. "A key restrictive feature of traditional equitable indemnity is that, on matters of substantive law, the doctrine is 'wholly derivative and subject to whatever immunities or other limitations on liability would otherwise be available' against the injured party." (*Prince, supra,* 45 Cal.4th at pp. 1158–1159.) In the present case, both GHD and Griffin established that they are not liable for injuries Hogan sustained at Humboldt's landfill. This non-liability necessarily affects Humboldt as the owner of the property where Hogan was injured by virtue of settled indemnity law, which precludes a claim for equitable indemnification absent a joint legal obligation to a third party. (*Ibid.*)

Humboldt contends that the trial court's finding that GHD is not liable to Hogan cannot be a valid basis for dismissing Humboldt's cross-complaint because GHD's nonliability to Hogan is based on the completed and accepted doctrine, which—as a matter of law—does not apply to a property owner's

11

claim against its contractor. This argument is based on inapposite cases and flawed legal reasoning, as we explained in *Humboldt I.*

Humboldt contends California courts have long "held" that the completed and accepted doctrine applies only to claims asserted by a third party such as Hogan, not claims by owners against their contractors. The cases Humboldt cites for this proposition all involve negligence claims asserted by injured third parties. (*Neiman, supra,* 210 Cal.App.4th 962; *Sanchez, supra,* 47 Cal.App.4th 1461; *Jones, supra,* 166 Cal.App.4th 707.) None had occasion to consider how application of the completed and accepted doctrine to bar an injured plaintiff's claim might affect a property owner's related claim for equitable indemnity.

Humboldt also relies on *Stewart v. Cox* (1961) 55 Cal.2d 857, 863, a property owner's action to recover damages for negligent construction of a swimming pool. (*Id.* at pp. 859–860.) That case is inapposite because the tort victims were the property owners rather than a third party. By contrast, Humboldt did not allege a cause of action for negligence against GHD or anyone else in this case. Humboldt's cross-complaint attempts to hold GHD liable for equitable indemnity and contribution pursuant to allegations that GHD is wholly or partially liable for a third party's personal injuries. These allegations fail as a matter of law in light of the trial court's finding that GHD is not liable for Hogan's injuries.

Humboldt contends that the "very existence" of a contractual relationship between a property owner and contractor "establishes the basis for a claim by the owner for 'implied contractual indemnity' against the contractor," which does not depend on the contractor's personal liability to the injured third party. Again, Humboldt misconstrues the law. In California, implied contractual indemnity is "a form of equitable indemnity."

12

(*Jocer Enterprises, Inc. v. Price* (2010) 183 Cal.App.4th 559, 573.) "Traditional equitable indemnity and implied contractual indemnity share a key feature that distinguishes them from express indemnity: unlike express indemnity, neither traditional equitable indemnity nor implied contractual indemnity is available 'in the absence of a joint legal obligation to the injured party.' . . . Thus, no indemnity may be obtained from an entity that has no pertinent duty to the injured third party [citation], that is immune from liability [citation], or that has been found not to be responsible for the injury [citation]." (*Id.* at pp. 573–574.)

In its reply brief, Humboldt attempts to eschew the rule that implied contractual indemnity is unavailable from an entity that has no pertinent duty to the injured party by relying on *S.F. Unified Sch. Dist. v. Cal. Bldg. etc. Co.* (1958) 162 Cal.App.2d 434. That case arose out of a dispute regarding liability for personal injuries sustained by a man who fell while washing windows at a high school. (*Id.* at p. 435.) After the window washer obtained a negligence judgment against the school district, the district attempted to recoup its losses by suing the man's employer for breach of its window washing contract. The employer filed a successful motion for nonsuit based on the exclusive remedy of the workers' compensation law and the common law rule of noncontribution among joint tortfeasors (which was recognized at that time), but the judgment was reversed on appeal. (*Id.* at pp. 436 & 440.) The *S.F. Unified* court found that workers' compensation law did not limit the school district's contractual rights against the injured man's employer, which included the right to express and/or implied contractual indemnity.[1] (*Id.* at pp. 441-442.) Moreover, the court found that an exception

[1] *S.F. Unified* was abrogated in part by the enactment of Labor Code section 3864, which abolishes any right to implied contractual indemnity

13

to the noncontribution rule could apply if the man's injuries were caused by the active negligence of his employer.  (*Id.* at p. 444 & 449.)

Humboldt contends that *S.F. Unified* establishes that GHD's immunity from liability to Hogan does not necessarily preclude Humboldt from holding GHD liable for implied contractual indemnity.  This exact argument was rejected in *Prince, supra*, 45 Cal.4th at p. 1167, a dispute over liability for injuries a child suffered when he attempted to dislodge a kite from an electrical power line that traversed his neighbor's property.  (*Id.* at p. 1156.)  Our Supreme Court held that PG&E's immunity from liability to the injured child barred the property owner's cross-complaint against PG&E, which was based "on an implied contractual indemnity theory."  (*Id.* at p. 1165.)  In reaching this conclusion, the court rejected the property owner's argument based on *S.F. Unified* that "implied contractual indemnity is properly available even when the alleged indemnitor is 'immune from direct liability' to the injured party.' "  (*Prince*, at p. 1166.)  The court explained that *S.F. Unified* was uniquely concerned with workers compensation law, which does not shield an employer from liability or negate the employer's duty of care, but instead reflects compensation bargains pursuant to which employers assume liability for employee injuries regardless of fault.  (*Prince*, at p. 1167.)  We follow *Prince* here in holding that *S.F. Unified* is not "persuasive authority" for permitting implied contractual indemnity when the alleged indemnitor is immune from direct liability to the injured party.  (*Prince*, at p. 1167.)

Taking a different tack, Humboldt posits that GHD's nonliability to Hogan is factually irrelevant.  According to this theory, no party has ever

---

against employers for injuries to their employees.  (See *Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 113.)

14

disputed that Humboldt's potential liability to Hogan could only arise by virtue of Humboldt's own conduct since there is no factual basis for Hogan to hold Humboldt liable for GHD's conduct pursuant to a theory of derivative or vicarious liability. This surprising new argument flies in the face of Humboldt's cross-complaint, which is premised on express allegations that Humboldt is not liable for Hogan's accident, that GHD is wholly or partially responsible for Hogan's injuries, and that if Humboldt is held liable to Hogan, its liability "would be based solely upon a derivative form of liability not resulting from [its own] conduct." In any event, we agree with the trial court that Humboldt's equitable indemnity claims against GHD derive from, in the sense that they fail with, Hogan's claims against GHD.

Finally, Humboldt contends that the part of the judgment dismissing its cross-complaint must be reversed because Humboldt was denied procedural due process and a meaningful opportunity to oppose this ruling. Without conceding error, GHD argues that Humboldt could not have suffered prejudice because it is collaterally estopped from relitigating the "fact" that GHD is not liable to Hogan. It is not clear whether GHD is contending that the trial court relied on collateral estoppel to dismiss the cross-complaint, or if it is arguing that the doctrine should be applied to uphold the judgment on appeal. Either way, we disagree.

Under the doctrine of collateral estoppel or issue preclusion, a "prior judgment conclusively resolves an issue actually litigated in and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The doctrine applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at p. 825.) In this case, the finding that GHD is not liable to

15

Hogan was not final when Humboldt's cross-complaint against GHD was dismissed, nor is that finding final now, while this appeal is pending. (*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1174.) Thus, issue preclusion does not apply, and we need not address the matter further as the record does not indicate that the trial court relied on issue preclusion to dismiss Humboldt's cross-complaint.

Nevertheless, we reject Humboldt's claim that it was denied a meaningful opportunity to oppose the dismissal of its cross complaint. Humboldt had notice that both Griffin and GHD sought summary judgment of Hogan's negligence claim on the ground that their tort duty to Hogan was extinguished by the completed and accepted doctrine. Humboldt also had notice of GHD's motion to amend the summary judgment order and to dismiss Humboldt's cross-claims for equitable indemnity. Humboldt did not oppose any of these motions on *any* substantive or procedural ground.

Humboldt insists that it was denied its right to adequate time to prepare an opposition to GHD's motion, which was decided on shortened time in violation of statutory procedure governing summary judgment motions. (*Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758.) As explained, the dismissal of Humboldt's cross-complaint was not a summary judgment ruling. Further, the amended summary judgment order entered against Hogan was not a ruling on a new motion, but a reconsideration of the court's prior ruling to address an issue that had been fully briefed and argued in the summary judgment proceeding. The exact issue was also briefed and argued in Griffin's summary judgment proceeding.

Even if the dismissal of Humboldt's cross-complaint under these circumstances was a procedural error, it was not prejudicial for two related reasons. First, Humboldt never opposed any ruling that culminated in the

16

order of dismissal on any ground whatsoever. Second, Humboldt fails on appeal to articulate a valid theory upon which it could hold GHD liable for equitable indemnification, which is the sole relief sought by Humboldt's cross-complaint. Under these circumstances, we find no reversible error relating to the dismissal with prejudice of Humboldt's claims against GHD for equitable indemnity. The remaining question is whether Humboldt may have a claim against GHD for express indemnity.

## III. Express Indemnification

Humboldt contends that the trial court's findings that Winzler and Griffin owed no tort duty of care to Hogan do not preclude Humboldt from holding GHD liable on a theory of express indemnification. In its appellate briefs, GHD fails to address this aspect of Humboldt's appeal, other than to observe that Humboldt did not allege a claim for express indemnity in its cross-complaint against GHD, which is not dispositive. An appellant may propose new facts and a new theory for the first time on appeal from a judgment on the pleadings, in order to show that the trial court abused its discretion in not granting leave to amend. (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347; *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 462–464.)[2]

_____

[2] At oral argument before this court, GHD's counsel argued that Humboldt's right to present a new theory on appeal is limited to curing defects in its cross-complaint; Humboldt may not, counsel argues, obtain reversal of the judgment to pursue a different cause of action for express indemnity. This new argument misconstrues *Community Water Coalition v. Santa Cruz County Local Agency Formation Com.* (2011) 200 Cal.App.4th 1317. *Community Water Coalition* applied the rule that when a trial court grants a party leave to amend, the pleader " 'may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend.' " (*Id.* at p. 1329.) This rule has no application here, where the trial

17

"Express indemnity refers to an obligation that arises ' "by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances." ' [Citation.] Express indemnity generally is not subject to equitable considerations or a joint legal obligation to the injured party; rather, it is enforced in accordance with the terms of the contracting parties' agreement." (*Prince*, *supra*, 45 Cal.4th at p. 1158.) Therefore, if Winzler assumed a contractual obligation to indemnify Humboldt for losses arising from Hogan's injuries, Humboldt may have a claim against GHD for express indemnification.

To state a cause of action for express indemnification, the indemnitee seeking recovery must allege facts to establish the following elements: a "contractual relationship" between the parties; the "indemnitee's performance of that portion of the contract which gives rise to the indemnification claim"; "a loss within the meaning of the parties' indemnification agreement"; and "the amount of damages sustained." (*Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1380.)

As we have noted, Humboldt did not purport to allege a cause of action for express indemnity in its cross-complaint against GHD. Indeed, Humboldt did not even allege that it had a contractual relationship with Winzler. On appeal, however, Humboldt relies on the July 2006 contract pursuant to which Winzler provided construction engineering services in connection with the closure of Humboldt's landfill. This contract is in the record as part of GHD's summary judgment evidence. Section 13 of the contract is titled

_____

court did not consider whether to grant or deny Humboldt leave to amend. For the same reason, GHD's new argument finds no support in *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176-177 (trial court "did not abuse its discretion in denying plaintiffs' 11th-hour request for leave to amend.")

18

"INDEMNIFICATION" and contains two provisions in which Winzler and Humboldt each agree to defend and indemnify each other and to hold the other harmless from all claims arising out of their own negligence, willful misconduct, or breach of any obligation under the agreement.

These contract provisions reinforce for an independent reason our conclusion that the trial court did not err by dismissing with prejudice Humboldt's claims for equitable indemnity. When "parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity." (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628; see also *McCrary Construction Co. v. Metal Deck Specialists, Inc.* (2005) 133 Cal.App.4th 1528, 1536; *Oltmans Construction Co. v. Bayside Interiors, Inc.* (2017) 10 Cal.App.5th 355, 361–362.)

However, these provisions also establish a basis for Humboldt to allege a claim for express indemnity against GHD as Winzler's successor in interest. Humboldt has carried its "burden to show there is a reasonable possibility the [cross-complaint's] defects can be cured by amendment." (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 671; see also p. 675.) Therefore, it is entitled to an opportunity to amend it cross-complaint against GHD.

## DISPOSITION

The part of the judgment dismissing Humboldt's cross-complaint is reversed and the matter is remanded to the trial court with directions to grant Humboldt leave to file an amended cross-complaint. The parties are to bear their own costs on appeal.

_Humboldt Waste Management v. GHD Inc._ (A159210)

TUCHER, J.

WE CONCUR:

STREETER, Acting P. J.
BROWN, J.